### HUGHES v. UNITED STATES.*

#### (Circuit Court of Appeals, Eighth Circuit. October 28, 1918.)

#### No. 5139.

1. INTERNAL REVENUE ⟨⊃11—HARRISON ANTI-NARCOTIC ACT.

The Harrison Anti-Narcotic Act (Comp. St. 1916, §§ 6287g–6287q) is valid as a revenue measure, having substantial relation to the raising of revenue, by bringing the traffic in such drugs into the open, and it is immaterial that another purpose of Congress may have been the suppression of the drug habit.

2. CRIMINAL LAW ⟨⊃304(4)—JUDICIAL KNOWLEDGE—MEANING OF WORDS.

Evidence that morphine, heroin, and cocaine are derivatives of opium and coca leaves is unnecessary, on prosecution for violation of the Harrison Anti-Narcotic Act (Comp. St. 1916, §§ 6287g–6287q); it being a matter of meaning of words long in common use, about which there is no obscurity, controversy, or dispute.

3. POISONS ⟨⊃4—HARRISON ANTI-NARCOTIC ACT—SALE BY PHYSICIAN AS DEALER.

Relative to violation of the Harrison Anti-Narcotic Act (Comp. St. 1916, §§ 6287g–6287q) by selling without written orders from purchasers, it is immaterial that defendant is a physician; his sales not being in the practice of his profession, but as a registered dealer.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

J. H. Hughes was convicted of violation of the Harrison Anti-Narcotic Act, and brings error. Affirmed.

B. F. Pursel, of Kansas City, Mo., for plaintiff in error.

Francis M. Wilson, U. S. Atty., and William G. Lynch, Asst. U. S. Atty., both of Kansas City, Mo.

Before HOOK and STONE, Circuit Judges, and WADE, District Judge.

HOOK, Circuit Judge. Hughes complains of a conviction and sentence for violating section 2 of the Harrison Anti-Narcotic Act of December 17, 1914 (38 Stat. 785, c. 1 [Comp. St. 1916, § 6287h]), by the sale of morphine, heroin, and cocaine to persons not producing written orders on forms issued by the Commissioner of Internal Revenue. He contends that the statute is unconstitutional, that the indictment charged no offense, and that the evidence at the trial was insufficient to justify his conviction.

Section 1 of the act (section 6287g) requires, among other things, all dealers in and dispensers of opium and coca leaves, their salts, derivatives, or preparations, to register with the collector of internal revenue and pay a tax. Section 2 prohibits, with exceptions, the sale or dispensing of the drugs, except upon the written order of the person seeking to purchase, made upon blank forms issued by the Commissioner of Internal Revenue. It also provides that to obtain the blanks the applicant must have registered and paid the tax required by section 1. Duplicate orders in each sale must be made, one to be retained by the purchaser and the other delivered to the dealer, both to be kept for a prescribed period and subject to official inspection. Section 9 (section 6287o) prescribes the penalty for violations. The effect of the provisions is to limit sales to registered dealers, save the excepted instances. One exception authorizes physicians and certain others to dispense the drugs in the course of "professional practice only," and the obtaining of them from a dealer upon a physician's prescription, both without the written order above referred to. The accused registered as a dealer and paid the tax, but he sold without written orders from the purchasers.

[1] It is urged that the purpose of the statute was the suppression of the drug habit, and that it is therefore not a revenue measure, but one of police, within the exclusive province of the states. But we think it cannot be said that the provisions referred to have no real or substantial relation to the raising of revenue. If they have such relation, we have nothing to do with any other purpose of Congress. The traffic in such drugs is of a peculiar character. Considerable of it is carried on covertly by peddlers, and the small bulk of the articles facilitates clandestine distribution. The difficulties of subjecting the traffic to excise and preventing frauds on the revenue are obvious, and it was competent for Congress to bring the traffic into the open. That there may be consumers of the drugs, who cannot or will not obtain them in the ways provided, is not enough to condemn the statute. Substantially the same result might have followed a heavy tax on such transactions, as to which there would be no col-

or for claim of unconstitutionality. In a case involving another provision, this same statute was held to be a revenue measure. United States v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854; Id. (D. C.) 225 Fed. 1003.

[2, 3] It is also urged that there was no evidence that morphine, heroin, and cocaine are derivatives of opium and coca leaves. We think that is a matter of which notice may be taken. In a sense the question is one of the definition or meaning of words long in common use, about which there is no obscurity, controversy, or dispute, and of which the imperfectly informed can gain complete knowledge by resort to dictionaries within reach of everybody. Had it deemed it necessary, the court might have affirmatively told the jury the nature of the drugs sold by the accused, but instead of doing so it assumed without question that they were of the kind covered by the statute, as in fact they were. The entire trial proceeded without objection upon that assumption. Common knowledge, or the common means of knowledge, of the settled, undisputed, things of life, need not always be laid aside on entering a courtroom.

It may be said, in conclusion, that, though the accused was a physician, he was not indicted and charged as one, and it was clearly shown that his sales were not in the practice of his profession. His position was that of any other nonprofessional dealer.

The sentence is affirmed.