## UNITED STATES v. HOLMES.
### No. 10204.

United States Court of Appeals,
Seventh Circuit.

Feb. 12, 1951.

Rehearing Denied March 21, 1951.

Julius Lucius Echeles, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., James P. Piragine, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

In the indictment herein defendant was charged, in Count 1, with having on September 14, 1949, at Chicago, Illinois, willfully and unlawfully purchased, from a person or persons unknown, a quantity of a certain derivative of opium, to wit, 112 grains of heroin, which said heroin was not then and there in the original stamped packages, nor from the original stamped packages, in violation of Sec. 2553(a), Title 26, U.S.C.A. Count 2 of the indictment charged that the defendant on September 14, 1949, at Chicago, Illinois, did unlawfully and willfully sell to Malcolm P. Richards, for the sum of $100, a quantity of a certain derivative of opium,

to wit, 112 grains of heroin, not in pursuance of a written order from the said Malcolm P. Richards on a form issued by the Secretary of the Treasury of the United States, in violation of Sec. 2554(a), Title 26, U.S.C.A. Count 3 of the indictment charged the defendant, on September 14, 1949, at Chicago, Illinois, did fraudulently and knowingly receive, conceal, buy and facilitate the transportation and concealment after importation into the United States of a quantity of a certain derivative of opium, to wit, 112 grains of heroin, knowing the same to be imported into the United States contrary to law, in violation of Sec. 174, Title 21, U.S.C.A.[1]

The defendant waived a trial by jury, was tried to the court, found guilty, and sentenced to a term of two years.

The trial was conducted in an atmosphere of easy informality. Two federal narcotics agents were the only witnesses for the government; the defendant was his own sole witness. An oral stipulation was agreed upon, to the effect that if one Elliot, a United States chemist, were called as a witness he would testify that he had examined and made a chemical analysis of Exhibit I, which had been handed to him by narcotics agent Fields on September 14, 1949, and that the contents thereof was heroin. Upon inquiry by the judge during the trial as to the amount of heroin contained in Exhibit I, government counsel informed him the amount was 112 grains, and again before sentence, when the court asked whether the amount was 100 grains, government counsel answered, " * * * 112 grains, one-quarter ounce." Defendant's counsel made no objection. In fact it is apparent that this information was considered as part of the stipulation. The quantity or identity of the white powder contained in Exhibit I was not in dispute at the trial.

Defendant's principal contention on this appeal pertains to Count 3, and is that the presumption, under 21 U.S.C.A. § 174, arising from possession of the narcotic drug is no longer effective due to the enactment of the Opium Poppy Control Act of 1942, 21 U.S.C.A. § 188 et seq. The presumption of possession has been attacked many times, but its constitutionality and validity have been repeatedly sustained. Some of the cases so holding are Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; Stein v. United States, 9 Cir., 166 F.2d 851; Gonzales v. United States, 9 Cir., 162 F.2d 870; Dear Check Quong v. United States, 82 U.S.App. D.C. 8, 160 F.2d 251; United States v. Moe Liss, 2 Cir., 105 F.2d 144; Charley Toy v. United States, 2 Cir., 266 F. 326; Gee Woe v. United States, 5 Cir., 250 F. 428. Defendant argues, however, that the effect of the enactment of the Opium Poppy Control Act of 1942 upon the presumption clause in 21 U.S.C.A. § 174 has not heretofore been considered by any court except our court, in United States v. Williams, 7 Cir., 175 F.2d 715, in which opinion defendant purports to find some support for his contention. However, that opinion clearly reveals 175 F.2d at page 716 that we did not decide the question.

It is the defendant's position that the provision of the statute that possession of the narcotic drug shall be deemed sufficient evidence to authorize a conviction under that section, unless defendant satisfactorily explains such possession, can be held valid only on the basis that opium poppies are not grown in this country.

[1]. This provision of the Jones-Miller Act provides: "If any person fraudulently or knowingly imports or brings any narcotic drug into the United States * * *, contrary to law, or assists in so doing or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, such person shall upon conviction be fined not more than $5,000 and imprisoned for not more than ten years. Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." 21 U.S.C.A. § 174.

Defendant argues that the Opium Poppy Control Act shows that Congress recognized that such poppies not only could be but are grown in this country, and that therefore the basis for the presumption no longer exists, and that the presumption provision of 21 U.S.C.A. § 174 must be considered invalidated since early 1943.[2]

A construction that a statute has been repealed by implication is one that should be rarely indulged in, and should in any event have only a very limited application. We do not feel we would be justified in construing the presumption provision of the Jones-Miller Act invalid by implication. Prior to the enactment of the Opium Poppy Control Act, no federal law prohibited the growing of opium poppies in the United States. Some may have been grown and the seeds used as food. See Stutz v. Bureau of Narcotics, Etc., D.C., 56 F.Supp. 810. The Control Act now prohibits the growing of opium poppies in this country except under license. We have been informed that a license has never been issued. The Annual Report of the U. S. Treasury Dept., Bureau of Narcotics, 1947, reports (pp. 27, 28) that no opium was produced up to that time in this country. We hold that the presumption provisions of 21 U.S.C.A. § 174 are valid and are in full force and effect, and that defendant's conviction under Count 3 must be sustained.

Passing to a consideration of Count 2, narcotics agent Richards testified that on September 14, 1949, he and a person known as "Red" went to defendant's apartment, that Red told the defendant that he (Richards) was the man who was to purchase the ¼ ounce of heroin for $100, that he gave Red $100 in currency and that in his presence Red turned it over to the defendant who took it and counted it, that defendant then stated that he would have to "make a call then to his connection," that arrangements were then made for defendant and Richards to meet at a nearby tavern, and a short time thereafter in the washroom of the tavern defendant handed to Richards a cellophane wrapped package containing white powder (identified as Exhibit I), and that there were no tax stamps on the package. Although defendant was not arrested until a later date, Richards positively identified him as the person who received the $100 and who delivered the heroin to him. Narcotics agent Fields corroborated the fact that Richards and Red went to the defendant's apartment on September 14, 1949, and that thereafter Richards and the defendant met at the tavern.

Defendant's testimony was a general denial that he purchased, possessed or sold the heroin in question. His credibility was undoubtedly affected to some degree by his two previous convictions of criminal offenses. Hence there was sufficient credible evidence to sustain the conviction on Count 2, unless there is merit to the defendant's contention that the government failed to prove that Exhibit I contained more than ⅛ grain of heroin. Title 26 U.S.C.A. § 2551(a) provides:

"Preparations of limited narcotic content. The provisions of this subchapter * * * shall not be construed to apply to the manufacture, sale, distribution, giving away, dispensing, or possession of preparations and remedies which do not contain more than two grains of opium, or more than one-fourth of a grain of morphine, or more than one-eighth of a grain of heroin * * *."

As indicated heretofore, we think it was stipulated in effect that Exhibit I contained 112 grains of heroin. The sum of $100 had been paid therefor. The size of the package[3] was a physical exhibit before the trial judge, but in addition we think that the burden of proof was on the defendant to show that he came within the exemption of that statute.

The rule is well stated in 7 Fifths Old Grand-Dad Whiskey v. United States, 10 Cir., 158 F.2d 34, 36, certiorari denied 330 U.S. 828, 67 S.Ct. 870, 91 L.Ed. 1277:

2. The Opium Poppy Control Act of 1942 became effective on the 60th day after its enactment on December 11, 1942.

3. 112 grains was 896 times greater in weight than the ⅛ grain permitted under the statute.

"Further, when a criminal statute sets forth an exception, which exception is not a part of the crime, but operates to prevent an act otherwise included in the statute from being a crime, the burden is on the defendant to bring himself within the exception. * * *" To the same effect: Green, Moore & Co., Inc., v. United States, 5 Cir., 19 F.2d 130, 131; Williams v. United States, 78 U.S.App. D.C. 147, 138 F.2d 81, 152 A.L.R. 1213; Taylor v. United States, 8 Cir., 19 F.2d 813, 816. We hold that the conviction under Count 2 is sustained.

It is true the record lacks direct evidence to sustain the charge in Count I, that defendant purchased the heroin from some person. However, in this case it is not necessary that there be sufficient evidence to sustain a judgment of guilty upon all counts of the indictment. As stated heretofore, we have sustained the conviction of the defendant herein under Counts 2 and 3. The trial court might have imposed a sentence of five years on Count 2 and ten years on Count 3, and have made them consecutive. The sentence imposed was for two years. Conviction on either Count 2 or Count 3 herein would support the judgment of conviction. United States v. Hornstein, 7 Cir., 176 F.2d 217; United States v. Empire Packing Co., 7 Cir., 174 F.2d 16. In this case the defendant was not prejudiced in the trial before the court, even if it be conceded *arguendo* that there was error as to Count 1. United States v. Perplies, 7 Cir., 165 F.2d 874.

Defendant urges as error that the government did not prove that heroin is a derivative of opium as charged in the indictment. As indicated heretofore, there was no contest at the trial as to the identity of the white powder contained in Exhibit I. Under the circumstances of this case, where defendant stipulated that the powder was heroin, we think that this court, as a matter of judicial knowledge, is justified in affirming the trial court's finding that heroin is a derivative of opium. Chadwick v. United States, 5 Cir., 117 F.2d 902, 903; Hughes v. United States, 8 Cir., 253 F. 543, 545; James v. United States, 5 Cir., 279 F. 111, 112; Greenberg v. United States, 8 Cir., 285 F. 865, 867.

Another error assigned is that the judge at the end of the trial said, "There will be a finding of guilty on both counts. Bond will be revoked, and I will fix sentence tomorrow morning." The assistant United States attorney immediately corrected the judge, saying there were three counts, and explaining each. The judge did not comment further. A record entry on June 26, 1950, recites, " * * * the Court * * * finds the defendant guilty as charged in the Indictment * * *." The judgment signed by the trial judge recites, " * * * the Court having heretofore found him guilty as charged in the Indictment * * *." We think the record sufficiently shows that the finding of guilt was on all counts of the indictment. But in any event prejudicial error was absent. Even assuming the court intended to find the defendant guilty on only two counts, and that one of said counts was Count 1, and that Count 1 was not sustained by the evidence, the conviction on either Count 2 or Count 3 would sustain the judgment.

Affirmed.